IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CALVIN JACKSON, JR.,

Plaintiff,

v.

S. SURBER *et al.*,

Defendants.

Case No. 2:22-cv-01832-SB

**FINDINGS AND
RECOMMENDATION**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Calvin Jackson, Jr. ("Jackson"), an adult in custody ("AIC") of the Oregon

Department of Corrections ("ODOC"), filed this action against the former governor of Oregon,

Kate Brown ("Governor Brown"), and several ODOC officials: S. Surber ("Surber"), Erin Reyes

("Reyes"), Mark Nooth ("Nooth"), Heidi Steward ("Steward"), Ken Jeske ("Jeske"), Colette

Peters ("Peters"), and Rob Persson ("Persson") (together, "Defendants"),[1] alleging constitutional

claims under 42 U.S.C. § 1983 as well state law claims. The Court previously granted

---

[1] To the extent that Jackson intended to name the State of Oregon as a defendant, he
failed to name the State of Oregon in the caption of his complaint in violation of Rule 10(a) of
the Federal Rules of Civil Procedure. The Court will not consider the State as a party to the
instant motion.

PAGE 1 – FINDINGS AND RECOMMENDATION

Defendants' motion to dismiss, and Jackson filed an amended complaint. Now before the Court is Defendants' renewed motion to dismiss. (ECF No. 32.)

The Court has jurisdiction over the claims pursuant to 28 U.S.C. §§ 1331 and 1367, but not all parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636. For the reasons discussed below, the Court recommends that the district judge grant Defendants' motion to dismiss.

## BACKGROUND

While incarcerated, Jackson filed a complaint asserting various claims related to Defendants' response to the COVID-19 ("COVID") pandemic.[2] (*See generally* Am. Compl., ECF No. 31.) Jackson resides at Two Rivers Correctional Institution ("TRCI"). (*See id.* at 1-4.)

At all relevant times, Governor Brown was the governor of Oregon (*id.* at 9); Peters was the director of ODOC (*id.* at 10); Steward was the deputy director of ODOC (*id.*); Nooth was ODOC's Eastside Institutions Administrator and was responsible for operations at six ODOC institutions, including TRCI (*id.* at 9); Persson was ODOC's Westside Institutions Administrator and was responsible for the remaining eight ODOC institutions (*id.* at 10); Reyes was the superintendent of TRCI (*id.* at 9); Jeske was the Oregon Correctional Enterprises ("OCE") Administrator (*id.* at 10); and Surber was a correctional officer at TRCI, unit fourteen (*id.* at 9).[3]

---

[2] "A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted). The Court considers the exhibits attached to Jackson's complaint.

[3] To the extent that Jackson includes allegations against Acting Superintendent Perry and "Jane and John Doe," the Court does not consider those allegations herein because Jackson has not named them as defendants in this case. (*See* Am. Compl. at 13, 20.)

PAGE 2 – FINDINGS AND RECOMMENDATION

Jackson alleges that Governor Brown issued a series of COVID-related emergency orders, including "ordering all to wear a mask" and "to take precautions to keep a distance of at least six feet between individuals." (*Id.* at 11.) In April 2020, Steward and Peters stated that ODOC would follow expert recommendations relating to masking. (*Id.* at 24; *see also* Am. Compl. Ex. 8, attaching a letter from Peters and Steward.)[4]

Jackson alleges various shortcomings in Defendants' policies in response to COVID. According to Jackson, Defendants failed to comply with Centers for Disease Control and Prevention ("CDC"), Oregon Health Authority ("OHA"), and ODOC policies. (Am. Compl. at 14, 25.)

Jackson alleges that, at TRCI, the ventilation system was inadequate, that he was housed in overcrowded "mini dormitories," and that social distancing was "nearly impossible" at work, in the housing unit, and when staff conducted pat downs of AICs. (*Id.* at 2-3.) Jackson alleges that Defendants continued to conduct cell searches and failed to implement social distancing and quarantine policies to prevent non-infected AICs from exposure to COVID. (*Id.* at 26-27.) Defendants did not remove Jackson from his cell or unit where other AICs had tested positive. (*Id.* at 12; *see also* Am. Compl. Ex. 3A, describing COVID positive and COVID negative AICs sitting together.) Further, Jackson alleges that Defendants allowed infected, quarantined AICs to travel through common areas, exposing Jackson and other AICs to COVID. (Am. Compl. at 26-27.) Defendants failed to indicate possible exposure areas with signs and moved a healthy AIC to a cell housing an AIC who had tested positive for COVID with a sign reading "quarantine/isolation" outside the cell. (*Id.* at 26.)

///

---

[4] Exhibits to Jackson's complaint are available at ECF No. 31-1.

PAGE 3 – FINDINGS AND RECOMMENDATION

Jackson further alleges that TRCI staff would use the same temperature device to take the temperature of AICs across all fifty-two cells and a mini dormitory once a day, Defendants administered COVID tests in a "congested area and nonsterile room," and Defendants never returned to retest the AICs who had been in close contact with or exposed to the AICs whose tests came back positive. (*Id.* at 5, 26.) According to Jackson, TRCI staff placed AICs in segregation if AICs exhibited symptoms or had been exposed to COVID. (*Id.* at 26; *see also* Am. Compl. Ex. 3I, another AIC testifying that AICs were placed in segregation if they tested positive for COVID.) Jackson was afraid of reporting COVID symptoms because he was told he would be sent to segregation for quarantine. (Am. Compl. at 5.) Thus, Jackson refused a COVID test. (*Id.*) Jackson alleges that Defendants knew that TRCI employees would not get the COVID vaccine. (*Id.* at 4.) Jackson asserts that Reyes, Nooth, Persson, Peters, and Brown did not "oversee their staff." (*Id.* at 15-16.)

Jackson also alleges that Surber and Reyes forced him to take a COVID test using intimidation in violation of ODOC's code of conduct, threatening segregation if he did not take the test. (*Id.* at 3-6, 32, 34.) Additionally, Jackson asserts that Reyes and Surber forced him to take the COVID vaccine using intimidation. (*Id.* at 6, 33-35, 39.) Persson allowed AICs to be transferred between ODOC institutions. (*Id.* at 7, 26, 36.) Defendants sent "mixed messages daily that lack[ed] consistency," and Reyes knew about the communication failure. (*Id.* at 5; *see also* Am. Compl. Ex. 2A, attaching an interview with Reyes where she acknowledged mixed messages.)

Defendants continued to require AICs to work despite CDC guidelines suggesting to ODOC that it should "consider suspending work release programs and other programs that involve movement of AICs/detained individuals in and out of the facility." (Am. Compl. at 21.)

PAGE 4 – FINDINGS AND RECOMMENDATION

Jackson alleges that TRCI staff allowed infected AICs to transfer from other facilities to the facility in which he worked. (*Id.* at 26.) Further, Jeske and Reyes allowed bags of laundry, labeled as contaminated with COVID, to enter TRCI's OCE worksite. (*Id.* at 4, 10, 22-23, 36.) Jeske, Nooth, and Reyes did not require AIC workers to take proper precautions and wear personal protection equipment ("PPE") while working around contaminated laundry. (*Id.* at 7.) After working with COVID-contaminated laundry, AICs returned to their housing units. (*Id.* at 23.) As a result, COVID spread through TRCI, and some of Jackson's friends died. (*Id.* at 40; *see also* Am. Compl. Ex. 14A, February 2022 article reporting that TRCI sustained the highest number of COVID deaths out of ODOC's facilities.)

According to Jackson, Defendants "did not readily accept mask or face covering recommendations," and failed to implement or enforce the CDC, OHA, and ODOC mask mandate. (Am. Compl. at 3-4, 13, 38.) Jackson claims that "most staff had an issue with wearing the mask[s.]" (*Id.* at 17.) Jackson also claims that Surber refused to wear a mask despite policies instructing him to do so and despite requests from Jackson and a nurse that Surber wear a mask. (*Id.* at 3, 13-15, 17.) Jackson alleges that AICs "were being held accountable to a higher standard [than] ODOC staff by receiving Misconduct Orders (Program Failure) for failure to wear [a] mask." (*Id.* at 4; *see also* Am. Compl. Ex. 3K, another AIC testifying that he received a "program failure" for not wearing a mask while TRCI staff received "amnesty.") According to Jackson, memos stating "[f]ace coverings [r]equired" were posted on every unit, and the TRCI compliance officer stated that all memos applied to staff and AICs. (Am. Compl. at 16.)

Jackson submitted a grievance reporting Surber's violation of the masking policy. (*Id.* at 9, 19.) Reyes reviewed and responded to the grievance stating Jackson's concerns would be addressed. (*Id.* at 19; *see also* Am. Coml. Ex. 15F, attaching Reyes' response.) Nooth responded

to Jackson's third grievance stating, "You have not provided any additional information in this appeal that would warrant a response other than which you have already received." (Am. Compl. at 21; *see also* Am. Compl. Ex. 15H, attaching Nooth's response.) Jackson alleges that Reyes and Nooth did not enforce the mask mandate, follow up on the complaint, or visit the housing unit to ensure compliance. (Am. Compl. at 13, 19-20.) Reyes did not oversee or address Surber's alleged misconduct or implement COVID-related training. (*Id.* at 19-20.) According to Jackson, Defendants continued not to follow the mask mandate after Jackson's grievance. (*Id.* at 19-20.) As a result, Jackson "has nightmares of dying of disease[s] like COVID-19" and is unable to sleep "all night." (*Id.* at 19.)

Jackson alleges that he has experienced emotional trauma and psychological distress and feared for his life because of Defendants' alleged failure to follow COVID guidelines. (*Id.* at 15, 30-31.) According to Jackson, Defendants' failure to take COVID mitigation measures resulted in the "loss of two supportive friends and a coworker, [inability] to sleep all night, nightmares of [losing another friend]," and nightmares of the risk to his own life. (*Id.* at 19.) Jackson alleges that Defendants' actions have caused "psychological pain, . . . survivor's remorse, . . . [and] nonmonetary losses, including but not limited to pain, mental suffering, emotional distress, loss of care, comfort, companionship and society, loss of consortium, inconvenience[,] and interference with normal and usual activities." (*Id.* at 31.)

In his amended complaint, Jackson raises claims for violations of the Eighth and Fourteenth Amendments. (*Id.* at 6, 31-40.) Jackson also mentions the Fourth Amendment, negligence, public nuisance, and Oregon Revised Statutes §§ 421.085 (prohibiting experimentation on adults in custody) and 433.010 (prohibiting willfully spreading any communicable disease). (*Id.* at 2-4, 6-7, 12, 30-31.) Jackson seeks a declaratory judgment that

PAGE 6 – FINDINGS AND RECOMMENDATION

Defendants violated his rights "under the Constitution and laws of the United States" as well as under ODOC's own policy; nominal, compensatory, and punitive damages; and "such additional relief as this Court may deem just and proper." (*Id.* at 41.)

The Court dismissed Jackson's original complaint, which alleged First, Eighth, and Fourteenth Amendment claims against a smaller subset of defendants. *See Jackson v. Surber*, No. 2:22-cv-01832-SB, 2023 WL 8257863 (D. Or. Nov. 29, 2023). Jackson filed an amended complaint. (*See generally* Am. Compl.) Defendants moved for dismissal (*see* Defs.' Mot. Dismiss ("Defs.' Mot."), ECF No. 32), and Jackson did not file a response.

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Self-represented litigants' "complaints are construed liberally and 'held to less stringent standards than formal pleadings drafted by lawyers.'" *Hoffman v. Preston*, 26 F.4th 1059, 1063 (9th Cir. 2022) (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)); *see also Hebbe*, 627 F.3d at 342 ("*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment of *pro se* filings[.]"). Courts must "afford [a self-represented litigant] the benefit of any doubt." *Hoffman*, 26 F.4th at 1063 (quoting *Hebbe*, 627 F.3d at 342). "Unless it is absolutely clear that no amendment can cure the defect, . . . a [self-represented] litigant is entitled

to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995)).

## DISCUSSION

Defendants ask the Court to dismiss all of Jackson's claims on the grounds that Jackson fails to allege that Defendants were personally involved in any alleged constitutional deprivation, fails to allege a Fourteenth Amendment claim, and fails to plead that Defendants acted with deliberate indifference or caused Jackson harm. (*See* Defs.' Mot. at 4-7.)

## I.    PERSONAL INVOLVEMENT

Defendants argue that Jackson has failed to plead Defendants' personal involvement in any alleged constitutional violation. (*Id.* at 7-8.)

### A.    Applicable Law

An official may be liable under Section 1983 "when culpable action, or inaction, is directly attributed to them." *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). A supervisor may be held liable under Section 1983 based on "either (1) [the supervisor's] personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 1207 (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A supervisor need not be physically present or "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." *Id.* at 1205 (quoting *Larez v. City of L.A.*, 946 F.2d 630, 645 (9th Cir.1991)).

A plaintiff must allege a defendant's personal involvement, or *respondeat superior* liability, for statutory and common law claims. *See Swanson v. Dep't of Just.*, No. 6:22-cv-01304-MK, 2022 WL 19693710, at *3 (D. Or. Dec. 13, 2022) (dismissing the self-represented

litigant's complaint where the plaintiff "failed to describe facts sufficient to demonstrate [two defendants'] personal involvement in a specific constitutional or statutory violation"), *findings and recommendation adopted*, 2023 WL 3168696 (D. Or. Apr. 28, 2023).

### B.    Analysis

Jackson alleges that Governor Brown issued a series of COVID-related emergency orders, including "ordering all to wear a mask" and "to take precautions to keep a distance of at least six feet between individuals." (Am. Compl. at 11.) Although Jackson alleges general allegations against Governor Brown, such as that she "allowed plaintiff to be violated in [her] care" (*id.* at 3), he has not plausibly alleged her personal involvement in a constitutional violation or any other claim. *See Gardner v. Brown*, No. 2:21-cv-1256-SB, 2024 WL 1155381, at *6 (D. Or. Mar. 18, 2024) ("[T]he Complaint does not allege that Brown was personally involved in the planning or implementation of the COVID-19 policies or procedures for Oregon's correctional institutions. The Complaint does not allege that Brown was even aware of those policies. Based on the allegations in the Complaint, [the plaintiff] has not alleged that Brown has either the requisite personal involvement in the alleged constitutional deprivation or that any specific conduct by Brown is causally connected to the alleged Eighth Amendment violation asserted . . . ."). Similarly, Jackson does not allege any conduct specific to Steward or Peters beyond general allegations that they did not "oversee their staff." (*Id.* at 15-16.)

Accordingly, the Court recommends that the district judge dismiss Jackson's claims against Governor Brown, Steward, and Peters with leave to amend.[5] *See Swanson*, 2022 WL 19693710, at *3 (dismissing the self-represented litigant's complaint where the plaintiff "failed

---

[5] Because Jackson alleges the personal involvement of Reyes, Surber, Nooth, Jeske, and Persson, the Court will address Jackson's claims against them on the merits.

to describe facts sufficient to demonstrate [two defendants'] personal involvement in a specific constitutional or statutory violation"); *Makoni v. Schroeder*, No. 16-cv-2497-BEN (PCL), 2017 WL 818467, at *5 (S.D. Cal. Feb. 28, 2017) ("Plaintiff has not stated a[n Eighth Amendment] claim against [the defendant] because he has failed to allege facts regarding what actions were taken or not taken by the Defendant which caused the alleged constitutional violations.") (citation omitted); *Herrera v. Nguyen*, No. 1:12-cv-01915 GSA PC, 2013 WL 1364691, at *2 (E.D. Cal. Apr. 3, 2013) (dismissing the plaintiff's Eighth Amendment claim regarding his treatment for high blood pressure and explaining that "the Court finds Plaintiff's allegations to be vague" where the plaintiff "sets forth generalized allegations regarding his health care, and identifies [the defendant]" but did not "describe what each defendant . . . did to violate the particular right"); *see also Kersh v. Gastelo*, No. 2:21-cv-01921-CAS-JDE, 2022 WL 17548074, at *4 (C.D. Cal. Aug. 23, 2022) ("To state a cognizable Eighth Amendment claim regarding COVID-19 prison conditions, a complaint must contain more than generalized allegations that a warden has not done enough to enforce six-feet social and living distancing to control the spread of COVID-19.") (citations omitted).

## II.    EIGHTH AMENDMENT CLAIM

Jackson alleges that (1) Persson allowed AICs to be transferred between ODOC institutions, (2) Jeske allowed contaminated laundry to enter TRCI's OCE worksite and did not require AICs to wear PPE, (3) Reyes allowed inconsistent communications at TRCI, permitted contaminated laundry to enter TRCI's OCE worksite, did not require AICs to wear PPE, did not enforce the mask mandate, did not train staff about COVID, and did not follow up on Jackson's grievance about Surber, (4) Nooth did not require AICs to wear PPE at TRCI's OCE worksite, did not enforce the mask mandate, and did not follow up on Jackson's grievance about Surber,

and (5) Surber refused to wear a mask despite policies instructing him to do so.[6] (Am. Compl. at 3, 7, 13, 17, 19-21, 36.) Jackson asserts that "he now suffers mentally, emotionally[,] and has psychological injuries." (*Id*. at 22.) He also argues that, where there is an unreasonable risk to an AIC's health, there is a valid Eighth Amendment claim "even where the damage has not yet occurred." (*Id*. at 18.) Defendants argue that Jackson has failed to demonstrate actual harm caused by any alleged indifference. (Defs.' Mot. at 7.)

### A.    Applicable Law

To establish an Eighth Amendment claim, an AIC must demonstrate (1) an "objectively, sufficiently serious" deprivation and (2) that the prison official acted with a "sufficiently culpable state of mind," i.e., "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (simplified). "The second prong requires showing: (a) a purposeful act or failure to respond to a[n AIC]'s pain or possible medical need and (b) harm caused by the indifference." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)); *see also Lemire v. Cal. Dep't of Corr. & Rehab*., 726 F.3d 1062, 1074 (9th Cir. 2013) ("[P]laintiffs alleging deliberate indifference must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries.") (citation omitted); *Hass v. Cnty. of Sacramento Dep't of Support Servs*., No. 2:13-cv-01746 JAM, 2014 WL 5035949, at *2 (E.D. Cal. Oct. 8, 2014) ("Actual injury—or a *continuing* risk of harm—is a necessary element of a . . . claim.") (citations omitted).

///

---

[6] To the extent that Jackson alleges an Eighth Amendment claim based on the allegations that Defendants allowed Jackson to interact with sick AICs or based on TRCI's ventilation, social distancing, temperature-taking, or frequency-of-testing policies, he has not alleged any of the Defendants' personal involvement in those incidents or policies.

As this Court explained in its first order of dismissal and as Jackson notes, in some situations, "the Eighth Amendment protects against future harm to [AICs.]" *Helling v. McKinney*, 509 U.S. 25, 33 (1993). In *Helling*, the plaintiff sought injunctive relief and damages. *Id*. at 28. The Supreme Court noted, "[i]t would be odd to deny an injunction to [AIC]s who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them." *Id*. at 33. "[A] remedy for unsafe conditions need not await a tragic event." *Id*. "[T]here may be situations in which exposure to toxic or similar substances would present a risk of sufficient likelihood or magnitude—and in which there is a sufficiently broad consensus that exposure of *anyone* to the substance should therefore be prevented—that the Amendment's protection would be available even though the effects of exposure might not be manifested for some time." *Id*. at 34 (simplified). In that case, to satisfy the first prong of the Eighth Amendment analysis, the plaintiff "must show that he himself is being exposed to unreasonably high levels of" dangerous substances. *Id*. at 35. Notably, in *Helling*, the Court found it significant that the plaintiff had been moved to a different prison and was no longer subject to smoke exposure. *Id*. at 35-36.

In *Farmer v. Brennan*, the Supreme Court reiterated that the Eighth Amendment protects against future harm. An AIC need not "await the consummation of threatened injury to obtain preventive relief." *Farmer*, 511 U.S. at 845 (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923)). "[I]nsofar as [the plaintiff's case] seeks injunctive relief to prevent a substantial risk of serious injury from ripening into actual harm," the plaintiff must plead "that there is 'a contemporary violation of a nature likely to continue[.]'" *Id*. at 845-46 (quoting *United States v. Or. State Med. Soc.*, 343 U.S. 326, 333 (1952)); *see also Kane v. Core Civic*, No. 2:20-cv-01037-JAD-VCF, 2020 WL 4059701, at *7 (D. Nev. July 20, 2020) ("If a court

finds that the Eighth Amendment's subjective and objective requirements are satisfied regarding a current and ongoing significant risk of serious harm to future health, it may grant appropriate injunctive relief." (citing *Farmer*, 511 U.S. at 846)).

**B.    Analysis**

The Court finds that Jackson has failed to state an Eighth Amendment claim.

First, Jackson fails plausibly to allege that Persson was deliberately indifferent to a serious risk of harm by allowing AICs to be transferred between facilities. Jackson has not alleged, for example, that AICs were transferred without testing or quarantine. Additionally, Jackson has not alleged that he suffered harm or an ongoing risk of harm because of Persson's actions. For example, Jackson has not alleged that Persson allowed an AIC to be transferred who then spread COVID.

With respect to Reyes, Nooth, Surber, and Jeske, Jackson has not alleged that their actions caused him any physical harm. Specifically, Jackson does not allege that he contracted COVID.[7] Although Jackson alleges that he now suffers nightmares of dying from diseases like COVID and that he has lost friends to COVID, those allegations do not rise to the level of psychological harm to state an Eighth Amendment claim. *See Creech v. Tewalt*, 84 F.4th 777, 792 (9th Cir. 2023) (explaining that "subjecting a prisoner to the unnecessary and wanton infliction of psychological pain constitutes cruel and unusual punishment under the Eighth Amendment" so long as the plaintiff alleges "severe psychological pain" and concluding that a prisoner facing execution by lethal injection had not plausibly alleged "severe psychological

---

[7] The Court previously identified this deficiency when it dismissed Jackson's original complaint, and Jackson's amended complaint again does not allege that Jackson contracted COVID. Because Jackson's Tort Claim Notice suggests that Jackson "eventually caught Covid" from Surber (*see* Am. Compl. Ex. 16B), the district judge should grant Jackson leave to amend his complaint if he can do so in good faith.

pain") (citations omitted); *see also Tucker v. Shepherd*, No. 21-xc-00248-PHX-DGC-JFM, 2021 WL 2187018, at *3 (D. Ariz. May 28, 2021) (rejecting the plaintiff's Eighth Amendment claim related to COVID conditions and explaining that "[f]ailure to protect from actual physical injury, not failure to protect from the fear of injury, is what violates the Eighth Amendment" (quoting *Brown v. Ellis*, No. 97-1873, 1999 WL 197222, at *2 (7th Cir. 1999))); *cf. Thomas v. Chu*, No. 3:20-cv-00245-GPC-BGS, 2020 WL 5408944, at *9 (S.D. Cal. Sept. 9, 2020) (rejecting the plaintiff's Eighth Amendment claim alleging a generalized fear of attack by a cell mate). As with his original complaint, Jackson does not seek any injunctive relief related to his Eighth Amendment claim. Further, he does not plead that Surber or any other ODOC officials are currently exposing him to an ongoing risk of COVID.

Accordingly, the Court recommends that the district judge dismiss Jackson's Eighth Amendment claim with leave to amend.[8] *See LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) (reversing the district court's conclusion that the plaintiff had established an Eighth Amendment violation where there was "no evidence in the record [the plaintiff] has suffered any serious injury as a result of this practice" and "[a]lthough an injunction certainly can be issued to protect [AIC]s from unsafe conditions before serious injury has occurred," the plaintiff failed to state a claim for injunctive relief); *Ardds v. Hodge*, No. 16-cv-2904-WQH-BLM, 2017 WL 5632076, at *4 (S.D. Cal. Nov. 22, 2017) ("Although Plaintiff need not wait for an injurious event to occur to seek injunctive relief, Plaintiff has not shown a real or immediate threat of . . .

---

[8] Defendants are also correct that in the absence of a physical injury, the Prison Litigation Reform Act bars Jackson from seeking compensatory damages for any alleged mental or emotional injury. *See Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002) ("The district court correctly interpreted § 1997e(e) to require a showing of more than *de minimis* physical injury in order to recover compensatory damages for mental or emotional injury."). However, Jackson seeks nominal and punitive damages in addition to compensatory damages. (Am. Compl. at 41.)

injury." (citing *Helling*, 509 U.S. at 33)); *Vivanco v. Cal. Dep't of Corr. & Rehab.*, No. 1:17-cv-00434-LJO-BAM, 2017 WL 4652746, at *4 (E.D. Cal. Oct. 17, 2017) (dismissing claim for injunctive relief where "there is no indication that there is any actual and immediate threat to Plaintiff, and there is no risk of future harm"); *Hass*, 2014 WL 5035949, at *2 (dismissing claim where plaintiff failed to allege any actual injury or *continuing* risk of harm); *Jackson v. Pompan*, No. 12-cv-6049-SI-PR, 2013 WL 1003603, at *3 (N.D. Cal. Mar. 13, 2013) (dismissing claim where "[t]he complaint does not suggest [the defendant]'s actions caused any actual harm"); *Proffitt v. Redding Police Dep't*, No. 06-cv-2144-FCD-KJM-P, 2007 WL 334265, at *3 (E.D. Cal. Jan. 31, 2007) (dismissing claim where the plaintiff failed to allege that the defendants "harmed him or caused him unnecessary pain").

## III.    FOURTEENTH AMENDMENT CLAIM

The Fourteenth Amendment provides guarantees of both procedural and substantive due process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("The [Fourteenth Amendment] categories of substance and procedure are distinct.").

### A.    Applicable Law

"A procedural due process claim hinges on proof of two elements: (1) a protectible liberty or property interest; and (2) a denial of adequate procedural protections." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (simplified).

Substantive due process rights protect against "arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). "To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." *Heidt v. City of McMinnville*, No. 3:15-cv-0989-SI, 2015 WL 9484484, at *7 (D. Or. Dec. 29, 2015) (quoting *Nunez v. City of L.A.*, 147 F.3d 867, 871 (9th Cir. 1998)). The Fourteenth Amendment

"provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citations omitted).

### B.    Analysis

#### 1.    Procedural Due Process

It is not clear what further process Jackson believes he was due here.[9] As such, Jackson's complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory to state a [procedural] due process claim[,]" and the Court recommends that the district judge dismiss any procedural due process claim. *Howe v. Cnty. of Mendocino*, No. 21-16665, 2022 WL 3952395, at *2 (9th Cir. Aug. 31, 2022) (simplified).

#### 2.    Conditions of Confinement

To the extent Jackson asserts that his conditions of confinement violated the Fourteenth Amendment, the Fourteenth Amendment provides the applicable standard for evaluating the conditions of confinement for pretrial detainees while the Eighth Amendment provides the applicable standard for evaluating the conditions of confinement for AICs who have already been convicted. *See Norbert v. City & Cnty. of S.F.*, 10 F.4th 918, 927-28 (9th Cir. 2021) (so explaining). The Eighth Amendment applies to Jackson's conditions of confinement claim, and the Court therefore recommends that the district judge dismiss Jackson's Fourteenth Amendment conditions of confinement claims. *See Flores v. Or. Dep't of Corr.*, No. 2:22-cv-01399-SB, 2023 WL 7280420, at *5 n.2 (D. Or. Nov. 3, 2023) (dismissing the AIC plaintiff's Fourteenth Amendment conditions of confinement claim).

///

---

[9] To the extent that Jackson realleges a procedural due process claim based on Nooth's denial of his grievance, the Court has already dismissed that claim, and Jackson does not allege any facts requiring a different result.

3.      **COVID Test and Vaccine**

To the extent Jackson asserts a substantive due process claim based on a right not to receive a COVID test or vaccine, the Court concludes that Jackson has failed to state a claim.

Jackson has not alleged any facts supporting his assertion that Surber and Reyes forced him to take a COVID vaccine through intimidation. He has not alleged what they said or did to pressure him to get vaccinated. Accordingly, he has failed to plead factual content that allows the Court to draw the reasonable inference that Surber and Reyes are liable for the misconduct alleged. *See Bompane v. Wellpath LLC*, No. 3:22-cv-00357-AR, 2023 WL 2245685, at *3 (D. Or. Jan. 5, 2023) ("[The plaintiff's] allegations are conclusory and thus fail to state a plausible claim for deliberate indifference under the Eighth Amendment." (citing *Jones v. Cmty. Redevelopment Agency of City of L.A.*, 733 F.2d 646, 649 (9th Cir. 1984))), *findings and recommendation adopted*, 2023 WL 2241894 (D. Or. Feb. 24, 2023); *cf. Health Freedom Def. Fund, Inc. v. Carvalho*, 104 F.4th 715, 725 (9th Cir. 2024) ("*Jacobson* held that mandatory vaccinations were rationally related to 'preventing the spread' of smallpox." (citing *Jacobson v. Commonwealth of Mass.*, 197 U.S. 11, 30 (1905))).

With respect to Jackson's suggestion that he was forced to take a COVID test, in *Jacobson*, the Supreme Court considered whether the government's mandatory vaccination policy had a "real or substantial relation" to its public health goals. 197 U.S. at 31. Jackson alleges that Surber and Reyes intimidated him into receiving a COVID test by threatening him with quarantine if he did not test. (Am. Compl. at 6.) Jackson has not alleged any additional facts about the details of the threatened isolation. The Court concludes that Jackson has failed to allege that the option between testing and isolating bears no real or substantial relation to public health. *See Tandon v. Newsom*, 517 F. Supp. 3d 922, 950 (N.D. Cal. 2021) (concluding that the government's COVID-related restrictions bore a real and substantial relation to public health and

PAGE 17 – FINDINGS AND RECOMMENDATION

collecting cases); *Bannister v. Ige*, No. 20-cv-00305 JAO-RT, 2020 WL 4209225, at *5 (D. Haw. July 22, 2020) (noting that the plaintiff conceded that an emergency proclamation requiring either a negative COVID test or quarantine had a real or substantial relation to public health).

Accordingly, the Court recommends that the district judge dismiss Jackson's Fourteenth Amendment claims with leave to amend.

## IV.    FOURTH AMENDMENT CLAIM

The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" absent a warrant supported by probable cause. U.S. CONST. amend. IV. "To assess whether governmental searches unrelated to law enforcement comport with the Fourth Amendment, courts consider '(1) the nature of the privacy interest upon which the search intrudes; (2) the character of the intrusion; and (3) the importance of the government interest at stake.'" *Miller v. Farris*, No. 21-cv-9551-SSS (AS), 2023 WL 4680370, at *6 (C.D. Cal. June 14, 2023) (quoting *Sanchez v. Cnty. of San Diego*, 464 F.3d 916, 927 (9th Cir. 2006)), *report and recommendation adopted*, 2023 WL 4850749 (C.D. Cal. July 28, 2023).

"As a threshold matter, [the plaintiff] do[es] not assert, and the Court cannot find, any controlling case indicating that a vaccine-injection requirement is a 'search' under the Fourth Amendment." *Burcham v. City of L.A.*, 562 F. Supp. 3d 694, 702 (C.D. Cal. 2022); *see also Miller*, 2023 WL 4680370, at *6 (same). Accordingly, the Court only considers whether Jackson has sufficiently alleged that COVID testing constituted an unreasonable search.

Under the second factor (i.e., the character of the intrusion of a COVID test), "the intrusion required for COVID-19 tests appears to be negligible—and Plaintiff has not alleged otherwise." *Miller*, 2023 WL 4680370, at *6 (collecting cases). Under the third factor, "the

PAGE 18 – FINDINGS AND RECOMMENDATION

government interest in containing the spread of COVID-19 . . . is strong, and regular testing . . . is at the very least a reasonable means of furthering that interest." *Id.* at *7.

Accordingly, the Court recommends that the district judge dismiss Jackson's Fourth Amendment claim with leave to amend. *See Burcham*, 562 F. Supp. 3d at 704 (balancing the three "special-interest factors and considering the allegations in the [complaint] in the light most favorable to Plaintiffs, the Court finds that Plaintiffs fail to state a claim that the City's weekly testing requirement violates the Fourth Amendment").

## V.     PUBLIC READINESS AND EMERGENCY PREPAREDNESS ACT

Defendants cite the Public Readiness and Emergency Preparedness ("PREP") Act but do not explain how they believe the Act applies to this case. (Defs.' Mot. at 4.)

The PREP Act "gives 'covered person[s]' immunity 'from suit and liability' for claims 'caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure.'" *Maney v. Brown*, 91 F.4th 1296, 1298 (9th Cir. 2024) (quoting 42 U.S.C. § 247d-6d(a)(1)). "The Act's immunity lies dormant until the Secretary of Health and Human Services 'makes a determination that a disease . . . constitutes a public health emergency' and 'make[s] a declaration, through publication in the Federal Register,' that the Act's immunity 'is in effect.'" *Id.* (quoting 42 U.S.C. § 247d-6d(b)(1)).

"On March 17, 2020, the Secretary issued a declaration announcing that COVID-19 'constitutes a public health emergency' and that 'immunity as prescribed in the PREP Act' was 'in effect' . . . ." *Id.* (quoting Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198, 15201 (Mar. 17, 2020)). The Secretary "broadly defined" a covered countermeasure to include "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19." *Id.* (quoting Declaration Under the Public

Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198, 15201 (Mar. 17, 2020)).

In *Hampton v. California*, the Ninth Circuit explained that the PREP Act did not apply to the defendants' failure to test AICs for COVID because "the PREP Act provides immunity only from claims that relate to 'the administration to or the use by an individual of' a covered countermeasure—not such a measure's *non*-administration or *non*-use." *Hampton v. California*, 83 F.4th 754, 763 (9th Cir. 2023) (citing 42 U.S.C. § 247d-6d(a)(1)). In *Hampton*, the defendants invoked a hypothetical from a Department of Health and Human Services advisory opinion which "illustrates the fact that, for a countermeasure with limited availability, administering the countermeasure to one person could mean withholding it from another." *Id.* However, the Ninth Circuit distinguished the hypothetical from the facts of *Hampton* because "[t]he Complaint nowhere suggests (and Defendants do not argue) that tests were in short supply and that Defendants saved the limited tests for others." *Id.*

In *Maney*, the Ninth Circuit discussed *Hampton* and reaffirmed the distinction between "prioritization of a scarce countermeasure" and "non-administration or non-use." 91 F.4th at 1301. Ultimately, in *Maney*, the Ninth Circuit concluded that PREP Act immunity extends to policy-level prioritization decisions. *Id.* at 1301-02.

Defendants do not explain how the Act applies here, although they imply that they may not be sued for their role in implementing certain policies. (Defs.' Mot. at 5.) To the extent that Defendants suggest that the Court should deny Jackson leave to amend because Defendants would be immune on all claims under the PREP Act, the Court disagrees. Whether the PREP Act bars COVID-related claims depends on the specific facts alleged. *See Hampton,* 83 F.4th at 763 (explaining that "the PREP Act provides immunity only from claims that relate to 'the

administration to or the use by an individual of' a covered countermeasure—not such a measure's *non*-administration or *non*-use"); *Maney v. Oregon*, No. 6:20-cv-00570-SB, 2024 WL 2288807, at *15 (D. Or. Apr. 10, 2024) (explaining at summary judgment that "[t]he Court cannot conclude on the current record that AICs did not receive COVID tests during the entire first year of the pandemic as a result of scarcity as opposed to other factors such as non-administration or non-use, to which PREP Act immunity might not apply");[10] *Polanco v. California*, No. 21-cv-06516-CRB, 2022 WL 625076, at *6 (N.D. Cal. Mar. 3, 2022) ("As pleaded, Defendants' alleged failures to administer covered countermeasures to [the plaintiff] do not bear a 'close causal relationship' to their administration of covered countermeasures to some other individual. And many of the allegedly tortious acts described in the complaint do not relate to a covered countermeasure at all."), *aff'd sub nom. Polanco v. Diaz*, 76 F.4th 918 (9th Cir. 2023). To the extent that Defendants suggest that the PREP Act applies to Jackson's COVID testing and vaccination claims, Jackson appears to challenge alleged threats and coercion accompanying the testing and vaccination, not the administration of the tests and vaccines themselves. If Jackson amends his complaint, the Court will address any subsequent PREP Act immunity argument tailored to the specific facts alleged.

///

///

///

---

[10] In *Maney v. Brown*, No. 6:20-cv-00570-SB, the Court has certified a damages class, commencing on March 8, 2020, and closing on May 31, 2022, of AICs in ODOC facilities who were incarcerated at any point on or after February 1, 2020, and who, while incarcerated, tested positive or were otherwise diagnosed with COVID at least fourteen days after the AIC entered ODOC custody. The damages class alleges Eighth Amendment and negligence claims. The defendants' appeal of the Court's summary judgment opinion is currently pending. It does not appear that Jackson is a member of the damages class.

## VI.    STATE LAW CLAIMS

To the extent that Jackson alleges a negligence claim, public nuisance claim, or a claim pursuant to Oregon Revised Statutes §§ 421.085 and 433.101, the Court concludes that he has failed to state a claim.

### A.    Negligence

"Although . . . [Oregon courts] generally analyze a defendant's liability for harm that the defendant's conduct causes another in terms of the concept of reasonable [foreseeability], rather than the more traditional duty of care, if the plaintiff invokes a special status, relationship, or standard of conduct, then that relationship may create, define, or limit the defendant's duty to the plaintiff[.]" *Stewart v. Kids Inc. of Dall., Or*, 261 P.3d 1272, 1277 (Or. Ct. App. 2011) (simplified). "However, even 'when a plaintiff alleges a special relationship as the basis for the defendant's duty, the scope of that [particular] duty may be defined or limited by common-law principles such as foreseeability.'" *Id.* (quoting *Or. Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 83 P.3d 322, 329 (Or. 2004)). Oregon courts turn to the Restatements for "useful guidance regarding the duty imposed as the result of a special relationship or status[.]" *Id.* at 1279 (collecting cases).

The Second Restatement of Torts provides, "[o]ne who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to" "protect them against unreasonable risk of physical harm[.]" RESTATEMENT (SECOND) OF TORTS § 314A (1965). The comments provide that "[t]he duty . . . is only one to exercise reasonable care under the circumstances[,]" and the custodian "is not required to take any action beyond that which is reasonable under the circumstances." Comments (e), (f), § 314A. Prison officials are also "under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them

from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to [the AIC], if the actor (a) knows or has reason to know that [the actor] has the ability to control the conduct of the third persons, and (b) knows or should know of the necessity and opportunity for exercising such control." RESTATEMENT (SECOND) OF TORTS § 320 (1965). "One who has taken custody of another may not only be required to exercise reasonable care for the other's protection when [the actor] knows or has reason to know that the other is in immediate need of it, but also to make careful preparations to enable [the actor] to give effective protection when the need arises, and to exercise reasonable vigilance to ascertain the need of giving it." Comment (d), § 320.

"When a defendant's negligence is a factual cause of harm to the plaintiff, the defendant is subject to liability to the plaintiff as long as the harm that the plaintiff suffered was a reasonably foreseeable result of the defendant's negligence." *Haas v. Est. of Carter*, 525 P.3d 451, 455 (Or. 2023) (quoting *Lasley v. Combined Transp., Inc.*, 261 P.3d 1215, 1219 (Or. 2011)).

Although Defendants had a special relationship to Jackson, *see Crane v. United States*, No. 3:10-cv-00068-AC, 2013 WL 1453166, at *5 (D. Or. Mar. 21, 2013) ("In summary, the court concludes Oregon law imposes a special relationship which here required the [United States Marshals Service] deputies to care for the [AICs] in their custody and generally protect them from harm."), *findings and recommendation adopted*, 2013 WL 1437816 (D. Or. Apr. 9, 2013), the Court concludes that Jackson has failed to state a negligence claim for the same reasons discussed with respect to Jackson's Eighth Amendment claim. He has failed to allege specific facts indicating that each defendant failed to exercise reasonable care to protect him from harm and has not alleged that any defendant's actions caused him harm.

///

Accordingly, the Court recommends that the district judge dismiss Jackson's negligence claim.

### B.    Public Nuisance

Jackson alleges that Defendants "provided a []public nuisance by not enforcing mask or face coverings during [the] COVID-19 crisis." (Am. Compl. at 6; *see also id.* at 12, 22, 24-25, 28-29.)

The invasion of a "right common to members of the public generally it is called a 'public nuisance.'" *Smejkal v. Empire Lite-Rock, Inc.*, 547 P.2d 1363, 1364 (Or. 1976) (citing *Raymond v. S. Pac. Co.*, 488 P.2d 460, 462 (Or. 1971)). "In order to maintain an action on account of a public nuisance a private party must show that he has sustained an injury of a special character distinct and different from that suffered by the public generally." *Id.* (citing, *inter alia*, *Raymond*, 488 P.2d at 462).

Because Jackson has not alleged a special injury, the Court recommends that the district judge dismiss his public nuisance claim. *Cf. Sprewell v. Fed. Express Corp.*, No. 2:20-cv-11612-SVW-AGR, 2021 WL 4706703, at *2 (C.D. Cal. May 19, 2021) ("When a public nuisance claim is based on risk of disease [under California law], the special injury requirement is not satisfied by a plaintiff who only alleges that his risk of contracting a disease, or the severity of his actual medical symptoms, is greater than that of the general public. . . . By contrast, a plaintiff can satisfy the special injury requirement by alleging that the public nuisance causes a medical condition distinct from the ordinary risks the nuisance creates for other members of the public. . . . Here, the Court concludes that Plaintiff fails to allege facts establishing the special injury requirement.") (citation omitted); *Wicker v. Walmart, Inc.*, 533 F. Supp. 3d 944, 949 (C.D. Cal. 2021) (concluding that the plaintiff had failed to state a claim for public nuisance under

California law because the plaintiff had failed to allege "any injury that is different in kind" from the injuries suffered by the general public related to COVID).

### C.    Oregon Revised Statute § 421.085

Oregon Revised Statute § 421.085(2) provides, "[t]here shall be no medical, psychiatric, or psychological experimentation or research with adults in custody in Department of Corrections institutions of the State of Oregon." Jackson has not alleged any facts to support a plausible claim for relief under Oregon Revised Statute § 421.085 because he has not alleged any facts about medical, psychiatric, or psychological experimentation or research. The Court recommends that the district judge dismiss this claim.

### D.    Oregon Revised Statute § 433.010

Jackson alleges that Surber violated Oregon Revised Statute § 433.010. (Am. Compl. at 30-31.) That statute provides, "[n]o person shall willfully cause the spread of any communicable disease within this state." OR. REV. STAT. § 433.010(1).

Although Jackson alleges that Surber did not wear a mask, he does not allege that Surber had COVID, knew he had COVID, or caused anyone else to contract COVID and therefore does not plausibly allege that Surber willfully caused the spread of a communicable disease. Accordingly, the Court recommends that the district judge dismiss this claim. *See Vergara v. Patel*, 471 P.3d 141, 153 (Or. Ct. App. 2020) ("[A]lthough ORS 433.010(1) provides that '[n]o person shall willfully cause the spread of any communicable disease within this state[,]' plaintiff did not allege any such willful action here.").[11]

///

---

[11] Because the Court recommends dismissal of all of Jackson's claims, the Court does not reach Defendants' argument that Jackson is not entitled to declaratory relief. (*See* Defs.' Mot. at 8-9.)

**CONCLUSION**

For the reasons stated, the Court recommends that the district judge GRANT Defendants'
motion to dismiss (ECF No. 32) and allow Jackson to file a second amended complaint within
thirty days if he is able to cure the deficiencies addressed herein.

**SCHEDULING ORDER**

The Court will refer its Findings and Recommendation to a district judge. Objections, if
any, are due within fourteen (14) days from service of the Findings and Recommendation. If no
objections are filed, the Findings and Recommendation will go under advisement on that date. If
objections are filed, a response is due within fourteen (14) days after being served with a copy of
the objections. When the response is due or filed, whichever date is earlier, the Findings and
Recommendation will go under advisement.

DATED this 13th day of August, 2024.

HON. STACIE F. BECKERMAN
United States Magistrate Judge