IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CALVIN JACKSON, JR., | Case No. 2:22-cv-01832-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| S. SURBER *et al.*, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Calvin Jackson, Jr. ("Jackson"), an adult in custody ("AIC") of the Oregon Department of Corrections ("ODOC"), filed this action against several ODOC officials: S. Surber ("Surber"), Erin Reyes ("Reyes"), Mark Nooth ("Nooth"), "Rumsey," Ken Jeske ("Jeske"), Joe Bugher ("Bugher"), Cindy Dieter ("Dieter"), and "Johnston" (together, "Defendants"), alleging constitutional claims under 42 U.S.C. § 1983 and state law claims. The Court previously granted Defendants' motion to dismiss Jackson's amended complaint. *See Jackson v. Surber*, No. 2:22-cv-01832, 2024 WL 4279428 (D. Or. Aug. 13, 2024), *findings and recommendation adopted*, 2024 WL 4278009 (D. Or. Sept. 24, 2024). Jackson subsequently filed

PAGE 1 – OPINION AND ORDER

a second amended complaint. Now before the Court is Defendants' renewed motion to dismiss. (Defs.' Mot. Dismiss ("Defs.' Mot."), ECF No. 47.) Jackson did not file a response.

The Court has jurisdiction over the claims pursuant to 28 U.S.C. §§ 1331 and 1367, and all parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636. For the reasons discussed below, the Court grants Defendants' motion to dismiss.

## BACKGROUND

While incarcerated, Jackson filed a complaint asserting various claims related to Defendants' response to the COVID-19 ("COVID") pandemic. (*See generally* Second Am. Compl. ("SAC"), ECF No. 46.) Jackson resides at Two Rivers Correctional Institution ("TRCI"). (*Id.* at 3.)

At all relevant times, Surber was a TRCI correctional officer (*id.* at 7); Reyes was TRCI's Superintendent (*id.* at 11); Jeske was the Oregon Correctional Enterprises ("OCE") Administrator (*id.* at 38); Bugher was ODOC's Assistant Director of Health Services (*id.* at 31); Rumsey was TRCI's Assistant Superintendent (*id.* at 18); Dieter was TRCI's medical manager (*id.* at 23); Johnston was a TRCI correctional officer (*id.* at 27); and Nooth was ODOC's Assistant Director of Health Services (*id.* at 35).

In his SAC, Jackson alleges that Defendants are liable for violations of the First and Eighth Amendments, Oregon Revised Statute ("ORS") § 421.085 (prohibiting experimentation on AICs), negligence, and negligence per se. (*Id.* at 43-55.) Jackson also mentions ORS § 433.010 (prohibiting willfully spreading any communicable disease). (*Id.* at 9, 38.) Jackson seeks a declaratory judgment that Defendants violated his rights "under the Constitution and laws of the United States" as well as under ODOC's own policies; nominal, compensatory, and punitive damages; and "such additional relief as this Court may deem just and proper." (*Id.* at 56-57.)

///

PAGE 2 – OPINION AND ORDER

**LEGAL STANDARDS**

To survive a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Self-represented litigants' "complaints are construed liberally and 'held to less stringent standards than formal pleadings drafted by lawyers.'" *Hoffman v. Preston*, 26 F.4th 1059, 1063 (9th Cir. 2022) (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)); *see also Hebbe*, 627 F.3d at 342 ("*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment of *pro se* filings[.]"). Courts must "afford [a self-represented litigant] the benefit of any doubt." *Hoffman*, 26 F.4th at 1063 (quoting *Hebbe*, 627 F.3d at 342).

**DISCUSSION**

Defendants ask the Court to dismiss all of Jackson's claims on the grounds that Defendants are immune from liability and Jackson fails to allege that Defendants were personally involved in any alleged constitutional deprivation, acted with deliberate indifference, or caused Jackson harm. (*See* Defs.' Mot. at 4-8.)

**I.      PUBLIC READINESS AND EMERGENCY PREPAREDNESS ACT**

Jackson asserts several claims relating to "experimentation or research with adults in custody," with sporadic references to the "vaccine." (*See* SAC at 47-48, alleging that Defendants violated Jackson's Eighth Amendment rights by "engaging in pervasive, egregious [m]edical

PAGE 3 – OPINION AND ORDER

experimentation" relating to "sickness, headaches, long term pain in bones due to reactions to [the] vaccine"; *id.* at 46, alleging that Jackson was "intimidated to take [the] vaccine that is unapproved/approved by the FDA"). The Court interprets these "experimentation" claims as alleging that Defendants violated state and federal law by administering the COVID vaccine. (*See id.*)

Defendants move to dismiss Jackson's claims on the ground that Defendants are immune from "suit and liability" under the Public Readiness and Emergency Preparedness ("PREP") Act because Jackson's "claims that he was subject to certain polices such as testing and vaccination, are within the parameters of the actions that ODOC officials had to take to combat the Covid-19 virus." (Defs.' Mot. at 4-6.)

A.     **Applicable Law**

"The PREP Act expressly states, in relevant part, that 'a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure.'" *Maney v. Brown*, 91 F.4th 1296, 1302 (9th Cir. 2024) (quoting 42 U.S.C. § 247d-6d(a)(1)). "The Act's immunity lies dormant until the Secretary of Health and Human Services 'makes a determination that a disease . . . constitutes a public health emergency' and 'make[s] a declaration, through publication in the Federal Register,' that the Act's immunity 'is in effect.'" *Id.* at 1298 (quoting 42 U.S.C. § 247d-6d(b)(1)).

"On March 17, 2020, the Secretary issued a declaration announcing that COVID-19 'constitutes a public health emergency' and that 'immunity as prescribed in the PREP Act' was 'in effect'[.]" *Id.* (quoting Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 ("PREP Act Declaration"), 85 Fed. Reg. 15198, 15201 (Mar. 17, 2020)). The Secretary "broadly defined" a covered countermeasure to

PAGE 4 – OPINION AND ORDER

include "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19." *Id.* (quoting PREP Act Declaration, 85 Fed. Reg. 15198, 15201 (Mar. 17, 2020)).

In *Hampton v. California*, the Ninth Circuit explained that the PREP Act did not apply to the defendants' failure to test AICs for COVID because "the PREP Act provides immunity only from claims that relate to 'the administration to or the use by an individual of' a covered countermeasure—not such a measure's *non*-administration or *non*-use." *Hampton v. California*, 83 F.4th 754, 763 (9th Cir. 2023) (citing 42 U.S.C. § 247d-6d(a)(1)). In *Maney*, the Ninth Circuit discussed *Hampton* and concluded that PREP Act immunity extends to policy-level prioritization decisions. *See Maney*, 91 F.4th at 1301-02.

B.   Analysis

Jackson appears generally to allege in his first, third, fourth, and seventh claims that Defendants are liable under state and federal law for experimenting on him as an AIC by giving him the COVID vaccine, which caused him harm. (SAC at 43-44, 47-49.) Jackson appears generally to allege in his second, fifth, sixth, eighth, ninth, and tenth claims that Defendants failed effectively to implement and enforce measures to protect Jackson from exposure to COVID. (*See id.* at 45-47, 49-50, 53-55.)

With respect to Jackson's second, fifth, sixth, eighth, ninth, and tenth claims, the Court finds that Defendants are not entitled to immunity under the PREP Act because those claims primarily relate to alleged misconduct or "*non*-administration or *non*-use" of countermeasures. *Hampton*, 83 F.4th at 763 (explaining that "the PREP Act provides immunity only from claims that relate to 'the administration to or the use by an individual of' a covered countermeasure—not such a measure's *non*-administration or *non*-use").

///

PAGE 5 – OPINION AND ORDER

With respect to Jackson's first, third, and fourth claims, the Court finds that Defendants are immune from suit and liability from those claims under the PREP Act. Specifically, Jackson alleges in his first claim that Defendants violated ORS § 421.085 by "exposing Mr. Jackson to substances or conditions or physical manipulation to ascertain their nontherapeutic effect on human beings[.]" (SAC at 44.) Jackson alleges in his third claim that Defendants violated his Eighth Amendment rights by "engaging in pervasive, egregious [m]edical experimentation and research on Mr. Jackson" resulting in "sickness, headaches, long term pain in bones due to reactions to [the] vaccine and the extreme emotional distress." (*Id.* at 47-48.) Jackson alleges in his fourth claim that Defendants violated ORS § 421.085, Oregon's prohibition on medical experimentation on AICs, which constitutes negligence per se. (*See id.* at 48-49.) To the extent that Jackson's first, third, and fourth claims relate to Defendants' administration of COVID tests or vaccines, the Court finds that Defendants are immune from liability under the PREP Act. *See Maney*, 91 F.4th at 1300 ("Plaintiffs concede that . . . COVID-19 vaccines are covered countermeasures[.]"); *Hampton*, 83 F.4th at 763 ("[A]ll agree that COVID tests are 'covered countermeasures.'"); *Maney v. Oregon*, 729 F. Supp. 3d 1087, 1119 (D. Or. 2024) (finding that many of the same defendants named here were "covered persons" under the PREP Act).

With respect to his seventh claim, Jackson alleges that Rumsey, Dieter, Johnston, Reyes, Nooth, and Bugher violated his First Amendment rights by allowing ODOC employees to "intimidate/coerce . . . Mr. Jackson to take vaccine shots." (SAC at 52.) The Court previously recognized that Jackson's challenge to alleged threats and intimidation accompanying testing and vaccinations may fall outside of the PREP Act's immunity, but declined to address the issue because Jackson failed adequately to plead facts to support the claim. *See Jackson*, 2024 WL 4279428, at *10 ("To the extent that Defendants suggest that the PREP Act applies to Jackson's

PAGE 6 – OPINION AND ORDER

COVID testing and vaccination claims, Jackson appears to challenge alleged threats and coercion accompanying the testing and vaccination, not the administration of the tests and vaccines themselves. If Jackson amends his complaint, the Court will address any subsequent PREP Act immunity argument tailored to the specific facts alleged."). Similarly, as further discussed below, the Court declines to address the PREP Act's applicability to Jackson's seventh claim because Jackson has failed adequately to plead facts to support that claim.

Accordingly, the Court grants Defendants' motion and dismisses Jackson's first, third, and fourth claims because the PREP Act bars those claims.[1]

## II.   CONSTITUTIONAL CLAIMS

### A.   Eighth Amendment

Jackson asserts his remaining Eighth Amendment claim against Reyes, Bugher, Nooth, Rumsey, and Jeske, alleging that "these defendants knew of the [COVID] material that entered the TRCI OCE laundry" and failed to take the appropriate steps to protect Jackson from exposure to COVID. (SAC at 54.)

#### 1.   Applicable Law

To establish an Eighth Amendment claim, an AIC must demonstrate (1) an "objectively, sufficiently serious" deprivation and (2) that the prison official acted with a "sufficiently culpable state of mind," i.e., "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (simplified). "Deliberate indifference" is established only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and

---

[1] Nevertheless, the Court finds that Jackson has failed to state a claim upon which relief can be granted for his first, third, and fourth claims for similar reasons to those explained below.

he must also draw the inference." *Clement v. Gomez,* 298 F.3d 898, 904 (9th Cir. 2002) (citing *Farmer,* 511 U.S. at 837). "A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,'" and "prison officials who act reasonably cannot be found liable[.]" *Farmer,* 511 U.S. at 844-45 (quoting *Helling v. McKinney,* 509 U.S. 25, 33 (1993)). "Mere indifference, negligence, . . . medical malpractice[, or e]ven gross negligence is insufficient to establish deliberate indifference to serious medical needs." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013) (simplified); *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) ("A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." (quoting *Toguchi v. Chung,* 391 F.3d 1051, 1060 (9th Cir. 2004))).

        **2.**    **Analysis**

The Court finds that Jackson fails to state an Eighth Amendment claim upon which relief can be granted. Specifically, the Court finds that Jackson's general allegations that the defendants were aware that COVID material entered the OCE laundry are vague and fail to establish that any defendant was deliberately indifferent to a substantial risk of serious harm. *See Lemire*, 726 F.3d at 1082 ("Mere indifference, negligence, . . . medical malpractice[, or e]ven gross negligence is insufficient to establish deliberate indifference to serious medical needs."); *Hamby*, 821 F.3d at 1092 ("A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment."). Accordingly, the Court dismisses Jackson's Eighth Amendment claims.

        **B.**    **First Amendment**

Jackson asserts a First Amendment claim against Rumsey, Dieter, Johnston, Reyes, Nooth, and Bugher alleging that Jackson was "intimidated/coerce[d] by ODOC employees to take vaccine shots" which "depriv[ed] [him] of his rights under . . . the First Amendment

PAGE 8 – OPINION AND ORDER

Freedom of Choice/Exercise." (SAC at 50-51.) The SAC also includes numerous allegations that Defendants violated Jackson's constitutional rights, the Health Insurance Portability and Accountability Act ("HIPAA"), and the Americans with Disabilities Act ("ADA") by disclosing his COVID test results on his cell door. (*See, e.g.*, SAC at 10, alleging that "[t]esting should remain confidential as required by [the ADA and HIPAA]"; *id.* at 11, "defendant failed to protect [Jackson's] F[IR]ST AMENDMENT RIGHTS to be free to exercise freedom of choice[ w]hen ODOC employees posted on [his] cell door Mr. Jackson needs to be [i]solated, letting others know of possible [COVID] virus maybe inside of cell, where plaintiff lived.")

1. **Applicable Law**

"To fall within the bounds of the Free Exercise Clause, a plaintiff's claims 'must be rooted in religious belief.'" *Or. Right to Life v. Stolfi*, No. 6:23-cv-01282-MK, 2024 WL 4345758, at *4 (D. Or. Sept. 30, 2024) (quoting *United States v. Ward*, 989 F.2d 1015, 1017 (9th Cir. 1992)). Jackson has not alleged that his claims are rooted in any sincerely held religious belief. Accordingly, to the extent that he asserts a First Amendment Free Exercise claim, the Court dismisses Jackson's claim.[2]

2. **Analysis**

To the extent Jackson asserts claims alleging that Defendants violated his constitutional right to privacy, HIPAA, or the ADA relating to his COVID records, Jackson fails to state a claim because "[AIC]s do not have a constitutionally protected expectation of privacy in prison

---

[2] To the extent that Jackson's seventh claim can be construed as a Fourteenth Amendment substantive due process claim, the Court dismisses that claim for the same reasons discussed in its previous opinion. *See Jackson*, 2024 WL 4279428, at *8 ("Jackson has not alleged any facts supporting his assertion that Surber and Reyes forced him to take a COVID vaccine through intimidation. He has not alleged what they said or did to pressure him to get vaccinated. Accordingly, he has failed to plead factual content that allows the Court to draw the reasonable inference that Surber and Reyes are liable for the misconduct alleged.").

treatment records when the state has a legitimate penological interest in access to them" and Jackson fails to "plead any facts to rebut the connection between disclosure of his prison treatment records and the State's legitimate penological objectives during his custody." *Seaton v. Mayberg*, 610 F.3d 530, 534-35 (9th Cir. 2010) ("Prisons need access to prisoners' medical records to protect prison staff and other prisoners from communicable diseases . . . and to manage rehabilitative efforts. . . . If a prisoner has a contagious disease . . . the prison may owe a duty, possibly a constitutional duty, to other prisoners to isolate him or otherwise protect them from him."); *see also Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1080 (9th Cir. 2007) ("HIPAA provides for no private right of action."); *Poole v. O.D.O.C.*, No. 3:14-cv-00793, 2015 WL 1526527, at *5 (D. Or. Apr. 3, 2015) (dismissing an AIC's claims that ODOC employees violated his constitutional right to privacy, HIPAA, and the ADA by sharing his HIV-positive status with other AICs because "[t]here is no showing or indication of a qualifying physical injury" under the Prison Litigation Reform Act).

Accordingly, the Court dismisses Jackson's seventh claim.

### C.     Fourteenth Amendment

Jackson asserts a "Civil Rights Violations" claim against Bugher, Rumsey, Dieter, and Reyes, alleging that they "[k]new or should have known of the tortu[r]ous abuse of the housing unit Officer, but failed to take any action to stop the abuse" which caused Jackson to "live[] in fear of retaliation of all defendants . . . [and] suffer[ an] actual PTSD [break] down." (SAC at 49.) Jackson does not identify a specific constitutional right that any defendant has violated. (*Id.*) The Court interprets Jackson's fifth claim as a substantive due process claim under the Fourteenth Amendment.

///

///

PAGE 10 – OPINION AND ORDER

1.   **Applicable Law**

Substantive due process protects against "arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). "To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." *Heidt v. City of McMinnville*, No. 3:15-cv-00989-SI, 2015 WL 9484484, at *7 (D. Or. Dec. 29, 2015) (quoting *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998)). The Fourteenth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citations omitted).

2.   **Analysis**

To the extent Jackson asserts a substantive due process claim based on "the tortu[r]ous abuse of the housing unit officer" and Defendants' "fail[ure] to take any action to stop the abuse[,]" the Court finds that Jackson has failed plausibly to allege facts to support a claim upon which relief can be granted. Jackson fails to allege any specific facts supporting who abused him, how he was abused, or when he was abused. In a separate claim, Jackson alleges that the same defendants (and Nooth) were negligent in housing "Mr. Jackson with officers who had assaulted and tortured him . . . by neglect that l[ed] to physical harm through defendants withholding of services to maintain his health, mental and wellbeing." (SAC at 45.) In that claim, Jackson also alleges that the defendants abused him "by abandonment, including desertion or willful forsaking of Mr. Jackson th[r]ough the withdrawal or neglect of duties and obligations owed to Mr. Jackson, such as not to be intimidated to take any vaccine that is unapproved/approved by the FDA while suffering being infected with [COVID.]" (*Id.* at 46.) Construing these allegations liberally, the Court interprets Jackson's allegations as a supervisory claim against Bugher,

PAGE 11 – OPINION AND ORDER

Rumsey, Dieter, and Reyes based on a failure to prevent housing officers from intimidating him into taking a COVID test or vaccine.

The Court finds that, like his FAC, Jackson fails to state a claim in his SAC upon which relief can be granted. Specifically, to the extent any of the defendants were involved in or aware of any alleged abuse, the Court finds that Jackson "has failed to plead factual content that allows the Court to draw the reasonable inference that [the defendants] are liable for the misconduct alleged" because he has not alleged "what they said or did to pressure him to get vaccinated." *Jackson*, 2024 WL 4279428, at *8 (citations omitted). Further, "Jackson has failed to allege that the option between testing and isolating bears no real or substantial relation to public health." *Id.*

To the extent Jackson asserts his claims against supervisors based on a subordinate officer's alleged abuse, the Court finds that Jackson has failed plausibly to allege any defendant's personal involvement in the alleged constitutional violation. *See Jackson*, 2024 WL 4279428, at *4-5 (dismissing supervisory claims because Jackson failed to "plausibly allege[ the defendants'] personal involvement in a constitutional violation or any other claim") (citations omitted).

Accordingly, the Court dismisses Jackson's Fourteenth Amendment claims.

## III.    STATE LAW CLAIMS[3]

To the extent that Jackson alleges that Defendants are liable for negligence, negligence per se, or violations of ORS §§ 421.085 and 433.101, the Court concludes that he has failed to state a claim.

---

[3] Defendants appear to argue that the Court should dismiss Jackson's state law claims because he failed to attach the Oregon Tort Claims Act notice to his SAC that he attached to his FAC. (*See* Defs.' Mot. at 9, "To the extent plaintiff states any state law claims for relief, he failed to allege compliance with the Oregon Tort Claims Act's notice provision—requiring that

A.    **Negligence**

Jackson appears to assert two negligence claims based on nearly identical factual allegations against two groups of defendants. Jackson alleges in his second claim that Rumsey, Dieter, Jonhston, Reyes, Nooth, and Bugher were negligent in failing to protect Jackson from a housing unit officer's abuse and heightened exposure to COVID. (SAC at 45-56.) Jackson alleges in his tenth claim that Nooth, Bugher, Reyes, and Jeske were negligent in failing to protect Jackson from a housing unit officer's abuse and heightened exposure to COVID in OCE laundry. (*Id.* at 54-55.)

"Although . . . [Oregon courts] generally analyze a defendant's liability for harm that the defendant's conduct causes another in terms of the concept of reasonable foreseeability, rather than the more traditional duty of care, if the plaintiff invokes a special status, relationship, or standard of conduct, then that relationship may create, define, or limit the defendant's duty to the plaintiff[.]" *Stewart v. Kids Inc. of Dall., OR*, 261 P.3d 1272, 1277 (Or. Ct. App. 2011) (simplified). "However, even 'when a plaintiff alleges a special relationship as the basis for the defendant's duty, the scope of that [particular] duty may be defined or limited by common-law principles such as foreseeability.'" *Id.* (citations omitted). Oregon courts turn to the Restatements for "useful guidance regarding the duty imposed as the result of a special relationship or status[.]" *Id.* at 1279 (collecting cases).

The Second Restatement of Torts provides, "[o]ne who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to" "protect them against

---

notice be given 180 days before suit."; *compare* FAC Ex. 16B *with* SAC.) In any event, the Court dismisses Jackson's claims on the merits.

PAGE 13 – OPINION AND ORDER

unreasonable risk of physical harm[.]" RESTATEMENT (SECOND) OF TORTS § 314A (1965). "The duty . . . is only one to exercise reasonable care under the circumstances[,]" and the custodian "is not required to take any action beyond that which is reasonable under the circumstances." Comments (e), (f), § 314A. Prison officials are "under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to [the AIC], if the actor (a) knows or has reason to know that [the actor] has the ability to control the conduct of the third persons, and (b) knows or should know of the necessity and opportunity for exercising such control." RESTATEMENT (SECOND) OF TORTS § 320 (1965). "One who has taken custody of another may not only be required to exercise reasonable care for the other's protection when [the actor] knows or has reason to know that the other is in immediate need of it, but also to make careful preparations to enable [the actor] to give effective protection when the need arises, and to exercise reasonable vigilance to ascertain the need of giving it." Comment (d), § 320.

"When a defendant's negligence is a factual cause of harm to the plaintiff, the defendant is subject to liability to the plaintiff as long as the harm that the plaintiff suffered was a reasonably foreseeable result of the defendant's negligence." *Haas v. Est. of Carter*, 525 P.3d 451, 455 (Or. 2023) (quoting *Lasley v. Combined Transp., Inc.*, 261 P.3d 1215, 1219 (Or. 2011)).

As the Court previously explained, "Defendants had a special relationship to Jackson[.]" *Jackson*, 2024 WL 4279428, at *11 (citing *Crane v. United States*, No. 3:10-cv-00068-AC, 2013 WL 1453166, at *5 (D. Or. Mar. 21, 2013), *findings and recommendation adopted*, 2013 WL 1437816 (D. Or. Apr. 9, 2013)). The Court concludes again, however, that Jackson has failed to allege specific facts indicating that each defendant failed to exercise reasonable care to protect him from harm. See *Jackson*, 2024 WL 4279428, at *11 ("Although Defendants had a special

relationship to Jackson, . . . [h]e has failed to allege specific facts indicating that each defendant failed to exercise reasonable care to protect him from harm[.]") (citation omitted).

Accordingly, the Court dismisses Jackson's negligence claims.

**B.     Negligence Per Se**

As an initial matter, Jackson cannot state a viable negligence per se claim because the Court has dismissed his negligence claims. *See Moody v. Or. Cmty. Credit Union*, 542 P.3d 24, 32 (Or. 2023) ("[T]o make out a claim of negligence per se and take advantage of a presumption of negligence arising from a statutory violation, a plaintiff must show not only that the statute sets out an applicable standard of care, but also that the plaintiff has an existing negligence claim."). For the following reasons, Jackson's negligence per se claims also fail on the merits.

Jackson alleges in his sixth claim that defendants Surber, Rumsey, Dieter, Johnston, and Reyes are liable under a negligence per se theory. (SAC at 50.) Jackson, however, fails to identify a specific statute at issue or allege any facts to satisfy the negligence per se requirements that he was a "member of the class of persons meant to be protected by the statute" and that his "injury . . . [was] a type that the statute was enacted to prevent." *Binci v. Alaska Airlines, Inc.*, No. 3:21-cv-01012-YY, 2022 WL 3715223, at *6 (D. Or. Aug. 29, 2022) (quoting *McAlpine v. Multnomah County*, 883 P.2d 869, 873 (Or. Ct. App. 1994)). Accordingly, the Court dismisses Jackson's sixth claim.

With respect to his eighth claim, Jackson alleges that defendants Surber, Rumsey, Dieter, Johnston, and Reyes are liable under a negligence per se theory for their failure to prevent COVID transmission within TRCI. (*See* SAC at 53.) Specifically, Jackson alleges that the defendants "failed to provide[] standard precautions to Mr. Jackson" in violation of Oregon Administrative Rule ("OAR") 291-124-0065, which constitutes negligence per se. (*See id.*) The Court finds that Jackson "has failed to allege specific facts indicating that each defendant failed

PAGE 15 – OPINION AND ORDER

to exercise reasonable care to protect him from harm[.]" *Jackson*, 2024 WL 4279428, at *11. Accordingly, the Court dismisses Jackson's eighth claim.

### C. ORS § 433.010

Jackson appears to allege that Surber and Jeske violated ORS § 433.010. (SAC at 9, 39.) That statute provides, "[n]o person shall willfully cause the spread of any communicable disease within this state." OR. REV. STAT. § 433.010(1).

Although Jackson alleges that Surber did not wear a mask, he does not allege that Surber had COVID, knew he had COVID, or caused anyone else to contract COVID, and therefore Jackson does not plausibly allege that Surber willfully caused the spread of a communicable disease.

With respect to Jeske, Jackson appears to allege that "ventilation systems, overcrowding, and dormitory-style of housing" caused COVID to spread throughout TRCI and that Jeske "was negligent in his conscious choice[s] to continue to bring in material [infected with] covid-19 [creating] a substantial risk of serious harm[.]" (*Id.* at 38-40.) Again, Jackson fails to allege facts to support that Jeske willfully caused the spread of COVID. *Jackson*, 2024 WL 4279428, at *12 ("Jackson . . . does not allege that Surber had COVID, knew he had COVID, or caused anyone else to contract COVID and therefore does not plausibly allege that Surber willfully caused the spread of a communicable disease. Accordingly, the Court recommends that the district judge dismiss this claim.") (citation omitted).

For these reasons, the Court dismisses Jackson's ORS § 433.010 claims. *See Vergara v. Patel*, 471 P.3d 141, 153 (Or. Ct. App. 2020) ("[A]lthough ORS 433.010(1) provides that '[n]o

PAGE 16 – OPINION AND ORDER

person shall willfully cause the spread of any communicable disease within this state[,]' plaintiff did not allege any such willful action here.").[4]

## IV.   DISMISSAL WITH PREJUDICE

Jackson has now had two opportunities to amend his complaint, and he has failed to state a claim upon which relief can be granted and "points to no additional facts that [he] might allege to cure these deficiencies[.]" *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008), *as amended* (Aug. 26, 2008) (affirming dismissal with prejudice for failure adequately to plead a required element of the claim) (citation omitted). The Court previously instructed Jackson that he must allege specific conduct relating to each defendant to support his claims. *See Jackson*, 2024 WL 4279428, at *4 ("A plaintiff must allege a defendant's personal involvement, or *respondeat superior* liability, for statutory and common law claims."); *id.* at *11 ("[T]he Court concludes that Jackson has failed to state a negligence claim . . . [because h]e has failed to allege specific facts indicating that each defendant failed to exercise reasonable care to protect him from harm and has not alleged that any defendant's actions caused him harm."). Jackson has failed to do so.

For these reasons, the Court dismisses Jackson's claims with prejudice. *See Beverly v. County of Orange*, No. 22-55080, 2022 WL 14003695, at *1 (9th Cir. Oct. 24, 2022) (affirming dismissal of the plaintiff's Section 1983 claim with prejudice where "[t]he district court properly accounted for [the plaintiff]'s pro se status; it had already granted [the plaintiff] leave to amend her complaint and provided guidance to remedy the pleading's deficiencies, but [the plaintiff] failed to follow that advice") (simplified); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186

---

[4] Because the Court dismisses all of Jackson's claims, the Court does not reach Defendants' argument that Jackson is not entitled to declaratory relief. (*See* Defs.' Mot. at 9.)

n.3 (9th Cir. 1987) (explaining that "a district court's discretion over amendments is especially broad where the court has already given a plaintiff one or more opportunities to amend [the plaintiff's] complaint") (simplified).

## CONCLUSION

For the reasons stated, the Court GRANTS Defendants' motion to dismiss (ECF No. 47) and DISMISSES Jackson's second amended complaint with prejudice.

**IT IS SO ORDERED.**

DATED this 5th day of March, 2025.

                                              HON. STACIE F. BECKERMAN
                                              United States Magistrate Judge